MAG. JUDGE ELLIS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Ronald B. Williams,<br><br>Plaintiff,<br><br>-against-<br><br>The City of New York, Carolyn Rios, Nicholas Colucci, Blandimir Falette, Michael Rauch, John Does 1 through 10,<br><br>Defendants | ECF CASE<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

## PRELIMINARY STATEMENT

1.      This is an action for money damages brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983 for the Defendants' commissions of acts under color of law in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

## JURISDICTION

2.      This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

3.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4).

## VENUE

4.      Venue is proper pursuant to 28 U.S.C. § 1391 (b) in that, *inter alia*, the events giving rise to the claim occurred in the Southern District of New York.

## JURY DEMAND

5.      The Plaintiff demands a trial by jury on each and every one of his claims as pled herein.

## PARTIES

6.      Plaintiff RONALD B. WILLIAMS is a resident of New York.  At the time of his arrest, he was employed as a construction worker.  He has lived his entire life at 267 West 114th Street in Manhattan.

7.      Defendant THE CITY OF NEW YORK (the "City") is a municipal corporation within the State of New York.

8.      The New York City Police Department (the "NYPD") is the department of the City responsible for, among other functions, arresting persons for offenses and maintaining custody over such persons prior to their initial appearance in court.  At all times relevant hereto, the NYPD, together with the City, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel.  In addition, at all relevant times, the NYPD, together with the City, was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obeyed the Constitutions and laws of the United States and of the State of New York.

9.      At all relevant times herein, defendant Carolyn Rios was employed by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

10.     At all relevant time herein, defendant Rios held the rank of Police Officer.

11.     At all relevant times herein, defendant Rios' shield number was 8915.

12.     At all relevant times herein, defendant Nicholas Colucci was employed by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

13.     At all relevant time herein, defendant Colucci held the rank of Police Officer.

14.     At all relevant times herein, defendant Colucci's shield number was 29420.

15.     At all relevant times herein, defendant Bladimir Falette was employed by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

16.     At all relevant time herein, defendant Falette held the rank of Police Officer.

17.     At all relevant times herein, defendant Falette's shield number was 26467.

18.     At all relevant times herein, defendant Michael Rauch was employed by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

19.     At all relevant time herein, defendant Rauch held the rank of Police Officer.

20.     At all relevant times herein, defendant Rauch's shield number was 26273.

21.     At all relevant times herein, defendant JOHN DOES 1 through 10 were police officers employed by the NYPD and each was acting in the capacity of agent, servant, and employee of the City.

22.     Plaintiff is unable to determine the actual names of John Does 1 through 10 at this time and thus sues them under fictitious names.

23.     At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the City and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. The individual defendants were acting for and on behalf of the City of New York at all times relevant herein with the power and authority vested in them as officers, agents and employee of the City of New York and incidental to the lawful pursuit of their duties as officers, employees and agents of the City of New York.

## STATEMENT OF FACTS

24.     On March 6, 2008, at approximately 10:40 PM plaintiff Ronald B. Williams was lawfully

outside of his home at 267 West 114th in Manhattan, talking to a friend who was in his car. Mr. Williams had just had a pizza delivered, which he gave to his niece to take upstairs while he spoke to his friend.

25.     A black car pulled up, out of which two young men, defendants herein, got out and approached Mr. Williams, grabbed him and told him not to move.

26.     After a few moments, the two men identified themselves as police officers, after which Mr. Williams asked them what was going on and why they were grabbing him. The officers said they would "tell him in a minute."

27.     Mr. Williams then saw more of the defendant officers arrive on the block, one of whom eventually told the officers who had initially approached Mr. Williams to "lock him up."

28.     The officers handcuffed Mr. Williams and placed him on a bench on the sidewalk.

29.     The officers were without probable cause to arrest Mr. Williams, who had done nothing wrong.

30.     While sitting on the bench, he heard an officer say, "I don't think that's him."

31.     That notwithstanding, Mr. Williams was placed in the back of a police car and taken to a NYPD Precinct.

32.     At the precinct Mr. Williams again heard officers stating that he was not the guy they wanted.

33.     At the precinct, Mr. Williams was place in a holding cell.

34.     There, he was subjected to a search where he was ordered to take all is clothes off, squat, spread his buttocks and lift his genitals. Feeling he had no choice in the matter, he complied. The cell in which Mr. Williams was subjected to this degrading strip search was not private and

could be seen by any officer or detainee that may have walked by.

35.     At the precinct, the police also took, and perhaps vouchered, money and a cell phone from Mr. Williams.

36.     Mr. Williams was eventually taken to Central Booking at 100 Centre Street in Manhattan.

37.     After approximately 24 hours in custody he was finally brought before a judge and arraigned on a felony complaint which charged him with Criminal Sale of a Controlled Substance in the Third Degree (PL § 220.39(1)) and Criminal Possession of a Controlled Substance in the Third Degree (PL § 220.16(1)) and released on his own recognizance.

38.     On or about April 29, 2008, presumably on the testimony of one or more of the defendant officers, a grand jury voted to indict Mr. Williams for Criminal Sale of a Controlled Substance in the Third Degree (P.L. § 220.39(1)), Criminal Possession of a Controlled Substance in the Third Degree (P.L. § 220.16(1)) and Criminal Possession of a Controlled Substance in the Fourth Degree (P.L. § 220.09(1)) under Indictment number 2236N-2008.

39.     Mr. Williams retained the services of a attorney to defend him against the accusations contained in the indictment.

40.     On November 17, 2009, the indictment against Mr. Williams was dismissed by the Honorable Laura Ward.

41.     Despite the efforts he made to do so, during, and as a result of, the more that one and a half years that his case was pending, Mr. Williams was unable to secure full-time employment.

42.     The NYPD has a formal policy, contained in its Patrol Guide, by which it authorizes strip searches only in situations where "the arresting officer reasonably suspects that weapons,

contraband, or evidence may be concealed upon the person or in the clothing in such a manner that they may not be discovered by the previous search methods. Other factors that should be considered in determining the necessity for a strip search include, the nature of the crime (serious violent felony), arrest circumstances, subject's reputation (extremely violent person), act of violence, and discoveries from previous searches." Additionally, an NYPD directive, limiting and clarifying the strip search policy, was issued on May 13, 2004.

43.    This notwithstanding, on information and belief, the NYPD has, and had at the time of the incident giving rise to this Compliant, a *de facto* policy and practice of strip-searching persons for reasons other than those specified in the Patrol Guide or NYPD directives.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 Against the Individual Defendants

44.    All other paragraphs herein are incorporated by reference as though fully set forth.

45.    By arresting, detaining, charging and strip searching plaintiff, the individual defendants engaged under color of law in the violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 to, *inter alia*, be free from unreasonable searches and seizures, false arrest and imprisonment, and malicious prosecution.

### SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 Against the City of New York

46.    All other paragraphs herein are incorporated by reference as though fully set forth.

47.    Municipal liability for the violations of plaintiff's Fourth and Fourteenth Amendment rights rests upon the grounds set forth below.

48.    At all times material to this complaint, the defendant City, acting through the NYPD

and the individual defendants, had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

49.     At all times material to this complaint, the defendant City, acting through the NYPD and the individual defendants, had *de facto* policies, practices, customs and usages of failing to properly train, screen, supervise or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants. The policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

WHEREFORE, the plaintiff requests that this Court:

1.     Assume jurisdiction over this matter;

2.     Award compensatory and punitive damages to plaintiff against the defendants, jointly and severally;

3.     Award plaintiff reasonable costs, disbursements and attorneys' fees; and

4.     Grant any other relief the court deems appropriate.

Dated:  New York, New York
        December 12, 2009

                        Respectfully submitted,

                        Darius Wadia, L.L.C.

                        By: Darius Wadia (Bar number DW8679)
                        Attorney for Plaintiff
                        233 Broadway, Suite 2208
                        New York, New York  10279
                        dwadia@wadialaw.com
                        (212) 233-1212